IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Elmas Clarke, | Case No. 1:12 CV 388 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Kimberly Clipper, | |
| Respondent. | |

### INTRODUCTION

Petitioner Elmas Clarke filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). This case was referred to the Magistrate Judge whose Report and Recommendation (R&R) recommended this Court deny the Petition (Doc. 8). Petitioner timely objected (Doc. 11). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. §§ 636(b)(1)(B) & (C), this Court has reviewed the Magistrate Judge's conclusions de novo. For the reasons that follow, this Court adopts the R&R and denies the Petition.

### BACKGROUND

Petitioner was convicted, after a September 2009 bench trial before the Cuyahoga County Court of Common Pleas, of one count of rape, one count of unlawful sexual conduct with a minor, and two counts of gross sexual imposition (Doc. 4-3, Tr. at 335–36) He was sentenced to a three-year term of incarceration, from which he was released in November 2012. Petitioner is now serving a five-year probation term. *See* www.drc.state.oh.us/OffenderSearch (last visited July 30, 2013).

The convictions relate to allegations of rape and molestation from Petitioner's stepdaughter. At trial, the State presented two witnesses: the stepdaughter, who was 12 years old at the time of the alleged incidents, and the victim's mother, Petitioner's then-wife Sonya Clarke. Petitioner testified on his own behalf. The Ohio court of appeals recounted the trial evidence as follows:

> {¶ 6} M.M. testified that she tried out for her school's seventh grade volleyball team in the summer of 2007, but did not make the team. [Petitioner] offered to work out with her so she could get in shape. M.M. said that she would wake up [Petitioner] at approximately 5:30 a.m. and they would work out in the basement for approximately 45 minutes to an hour. For the first several months, nothing untoward happened. But, according to M.M., beginning in January 2008, [Petitioner] would massage her legs and then touch her vagina outside her underwear after they exercised. M.M. stated that this happened almost every day they exercised.
>
> {¶ 7} M.M. testified that in March 2008, during a "movie night" at home with [Petitioner] and her younger brother, [Petitioner] "kept touching" her vagina as she dozed on his leg. M.M. testified further that in June 2008, after exercising one morning, [Petitioner] massaged her legs up to her vagina, then told her to roll over, pulled down her underwear, and put his finger in her vagina. M.M. testified that he kept pushing his finger in and out while she "just laid there." After the incident, [Petitioner] told her not to tell anyone what had happened. M.M. said that she could not remember the exact date of this incident, but knew that it occurred shortly after school ended on June 4, 2008.
>
> {¶ 8} M.M. said that she did not tell anyone about these incidents because she was afraid she would not be believed. On July 21, 2008, she told her natural father what had happened, and he told her to tell her mother. On July 23, 2008, M.M. wrote a note explaining what [Petitioner] had done and left it on Sonya's bed. Sonya testified that after reading the note, she confirmed with M.M. that she was telling the truth.
>
> {¶ 9} Sonya gave the note to [Petitioner] that night when she saw him at a football practice for their son. Sonya testified that [Petitioner] read the note and then suggested they go home and talk about it, which was not the reaction she expected. Sonya and her children did not return to the home after that evening.
>
> {¶ 10} [Petitioner] testified for the defense and denied ever touching M.M. inappropriately. He testified further that he was out of town on business on June 10, 2008, returning on June 12, 2008. Sonya likewise testified that [Petitioner] was out of town on those dates.

*State v. Clarke*, 2010-Ohio-5010, at ¶¶ 6–10 (Ohio Ct. App. 2010).

2

Petitioner timely appealed his conviction to the Ohio court of appeals and the Ohio Supreme Court. He filed the instant Petition in this Court raising two grounds for relief: (1) ineffective assistance of trial counsel for failing to timely provide certain documents to the prosecution; and (2) insufficiency of the evidence with respect to the rape count.

## STANDARD OF REVIEW

When a federal habeas claim has been adjudicated by the state courts, 28 U.S.C. § 2254(d)(1) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." A federal court may grant habeas relief if the state court arrives at a decision contrary to the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). The appropriate standard is whether a state court's application of clearly established federal law was unreasonable, and not merely erroneous or incorrect. *Id.* at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). This is a demanding standard met "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999).

## ANALYSIS

**Ineffective Assistance of Counsel**

At the start of the bench trial, the prosecutor objected to exhibits provided to her that day by Petitioner's trial counsel, arguing the documents were not timely provided under Ohio Criminal Rule 16 (Tr. at 122–24). The exhibits at issue appear to relate to two distinct issues: (1) documents

3

purporting to demonstrate that Sonya Clarke had been looking for apartments prior to learning on July 23, 2008 of the allegations against Petitioner, and (2) documents supporting Petitioner's contention that he was out of town June 11, 2008, the "on or about" date alleged in the indictment for the rape count (*see id.* at 123–26). The trial court withheld its ruling on the objections until trial counsel actually attempted to admit the documents (*id.* at 125).

After Petitioner filed his notice of alibi, trial counsel indicated he and the prosecutor had pre-trial discussions in which the prosecutor indicated the stepdaughter was no longer contending that the alleged rape occurred on June 11, but rather was uncertain of the precise date. He agreed he would only use the documents relating to Petitioner's whereabouts on June 11 "in case she wants to stick to June 11th. I have every indication that she's going to change that date" (*id.* at 126). The prosecutor was "more concerned" about the card allegedly showing apartment hunting, at which time trial counsel represented he would not use the card "unless [Sonya Clarke] lies" (*id.*). The trial court delayed ruling on these issues until they arose (if they did) during trial (*id.*).

Trial counsel never moved to admit these documents, and Petitioner claims this failure rendered his counsel ineffective. The Ohio court of appeals, applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), rejected this claim on direct appeal. The court found that even assuming trial counsel was ineffective, Petitioner was not prejudiced because the alibi documents were cumulative of testimony elicited from witnesses and because the stepdaughter admitted she was unsure about the June 11, 2008 date.

> {¶ 15} It was well established at trial even without the documents that Clarke was out of town on June 10, 11, and 12, 2008. He testified to this fact and Sonya Clarke confirmed that he was in Connecticut on those dates. Thus, the admission of documents confirming his alibi for those dates would have added little to Clarke's alibi defense.

4

> {¶ 16} More significantly, Clarke's absence on those dates was not dispositive of the rape and unlawful sexual conduct with a minor charges. M.M. admitted that she was not sure about the June 11, 2008 date, but testified that she was sure that the incident where Clarke inserted his finger in her vagina occurred within a week or two after school let out on June 4, 2008. Thus, as permitted by law, the indictment charged that the alleged rape and unlawful sexual conduct with a minor occurred "on or about June 11, 2008"; it did not state that the offenses occurred only on June 11, 2008.

*Clarke*, 2010-Ohio-5010 at ¶¶ 15–16.

Under *Strickland*, a criminal defendant must establish both that his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. *Higgins v. Renico*, 470 F.3d 624, 631 (6th Cir. 2006). In evaluating the prejudice prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, ___U.S.___, 131 S. Ct. 770, 787 (2011). Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Ohio appellate court's application of federal law was not unreasonable. The prosecution and the witnesses did not dispute that Petitioner was out of town on June 11, 2008. Petitioner testified he was out of town June 5–7 and June 10–12, 2008, and Sonya Clarke corroborated that Petitioner was gone June 10–12 (Tr. at 268; 233–34). The stepdaughter testified she was unsure which date Petitioner allegedly raped her, but testified it occurred sometime shortly after the school year ended on June 4 (Tr. at 149, 172–73).

The documents demonstrating Petitioner was out of town would have been cumulative to this testimony. Petitioner's real problem appears to be with the use of "on or about" in the charges. However, "on or about" charges are not per se constitutionally infirm in cases where a defendant presents an alibi defense, and Petitioner has not explained why the use of "on or about" in this case was impermissible. *See United States v. Neuroth*, 809 F.2d 339, 341 (6th Cir. 1987).

5

With regard to the documents concerning the apartment, on cross examination Sonya Clarke admitted that she had been looking at apartments before she learned about her daughter's allegations (Tr. at 237). These documents were unnecessary because the fact was not in dispute, and the admission of such documents would not have altered the outcome of this case.

**Sufficiency of the Evidence**

Petitioner claims that the evidence adduced at trial was insufficient to support a conviction for rape because there was no evidence of force. In his Objection, Petitioner argues that because "there was no testimony that the Petitioner had physically or psychologically abused the alleged victim . . . , the elements of the rape charge were not met" (Doc. 11 at 4). The Ohio appellate court rejected this argument on direct appeal:

> {¶ 23} In this case, the State presented sufficient evidence of both physical and psychological force against M.M. to support [Petitioner's] rape conviction. M.M. testified that [Petitioner] pulled her underwear down before he inserted his finger in her vagina. This court has held that pulling down a child victim's underwear "can only be accomplished by the application of physical force," even though such force requires only "minimal physical exertion." *State v. Sullivan* (Oct. 7, 1993), 8th Dist. No. 63818.
>
> {¶ 24} Further, M.M. testified that she did not "feel free" to get away from Clarke as he violated her and that when he was finished, he told her not to tell anyone what had happened. Under such circumstances, we find nothing unreasonable about a finding that M.M.'s will was overcome and that consequently, the forcible element of rape was established. *See* [State v.] *Eskridge,* [(1988), 38 Ohio St. 3d 56, 58]; *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 500 N.E.2d 390

*Clarke*, 2010-Ohio-5010 at ¶¶ 23–24.

In evaluating a sufficiency of the evidence claim, this Court determines whether, viewing the evidence in the light most favorable to the prosecution and without reweighing the evidence, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pordash v. Hudson*, 388 F. App'x 466, 467 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191,

6

205 (6th Cir. 2009)).  Even if this Court were to determine that a rationale trier of fact could not have found the essential elements of the crime, under AEDPA, this Court must defer to the state appellate court's contrary determination so long as it is not unreasonable.  *See id.*

Petitioner claims the R&R errs by finding the Ohio court was not unreasonable when it determined that, under Ohio law, for purposes of rape, "coercion" is inherent in a parent-child relationship (Doc. 11 at 3–4).  Petitioner argues there was no testimony that Petitioner physically overpowered or otherwise threatened his stepdaughter (*id.*).

Under Ohio law, it is criminal for a person to "engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  R.C. § 2907.02(A)(2).  Ohio statute defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."  R.C. § 2901.01(A)(1).  Ohio case law holds that, "force or threat of force can be inferred where a defendant purposely compelled the victim to submit by employing certain objective actions that can be found to have overcome the will of the victim by fear or duress."  *State v. Rupp*, 2007 WL 969069, at *8 (Ohio App. Ct. 2007).  In *State v. Eskridge*, 38 Ohio St. 3d 56, 58 (1988), the Ohio Supreme Court held that a perpetrator's parental relationship to the victim may be proof of force when the victim is a child because the role of parent is an inherently authoritative one.

Petitioner was the stepfather, an authoritative role, meaning even only the minimal force of removing her underwear was sufficient to meet the force or threat of force requirement for a rape conviction.  Further, the stepdaughter testified that she did not feel free to leave.  The Ohio court properly determined that the trial evidence supported Petitioner's rape conviction as defined by Ohio law.  This was not unreasonable.

7

**CONCLUSION**

For the foregoing reasons, this Court adopts the R&R and denies the Petition. Furthermore, Petitioner has not made a substantial showing of the denial of a constitutional right, so this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

July 31, 2013